IN THE UNITED STATES DISTRICT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RELATION INSURANCE SERVICES SELECT, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. A. No.1:25-cv-343 |
| DAVID A. PERRY, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Relation Insurance Services Select, Inc. ("Relation") complains of the wrongful acts of Defendant David A. Perry ("Perry"). Relation seeks injunctive relief and, to the extent calculable, monetary damages to redress Perry's continuing breaches of contractual promises he made when selling his business to Relation for many millions of dollars.

## I.
## NATURE OF THIS ACTION

1. Relation is a leading insurance brokerage firm in North Carolina and beyond. In July 2021, Relation paid Perry nearly *$8 million in cash, plus substantial other consideration*, to acquire the assets of Perry Insurance Group, Inc. ("Perry Insurance"), an insurance broker based in South Carolina. Perry also received a senior employment position as a Vice President for Relation.

2. As part of the deal, Perry promised he would not engage in a competing business for at least the 5-year period following the sale. Newly-discovered information reveals Perry has chosen not to live up to his end of the bargain, to put it mildly.

3. In early November 2024, Perry notified Relation he was retiring from the insurance business to "enjoy life after work." His employment with Relation ended on December 2, 2024.

1

Relation had no reason to believe Perry was lying or misleading its leadership about his retirement plans. But now—only months later—Relation has made various alarming discoveries related to Perry's apparent competition just down the road from the Lexington, South Carolina, office where he worked for Relation and for Perry Insurance before that.

4. Not only has Perry established a new competing business in Relation's backyard in breach of his promises not to compete, but he and others working alongside him appear to be engaged in further unfair and deceptive tactics intended to surreptitiously siphon off the book of business he sold to Relation several years ago. Relation expects it only has discovered the "tip of the iceberg," and discovery will reveal the full extent of Perry's unfair competition and that of his apparent co-conspirators.

5. Perry's breaches of his restrictive covenant promises have caused and will further cause irreparable harm to Relation's business unless restrained by the Court, including the loss of customer goodwill and harm to the going-forward value of the other assets Relation bought from Perry at a premium. The injunctive relief Relation seeks is needed to prevent further irreparable harm and return the parties to the *status quo ante*.

## II.
## PARTIES, JURISDICTION, AND VENUE

6. Relation is incorporated in North Carolina and is authorized to do business there. Its primary office and registered agent in North Carolina are located in this District. Relation's companywide principal place of business is in Illinois.

7. Perry is domiciled in South Carolina, is last known to reside at 9 Morning Lake Court, in Lexington, South Carolina, 29072, and may be served with process wherever he may be found.

8. The citizenship of the parties is diverse, and the amount in controversy exceeds the jurisdictional minimum. The object of this litigation—Perry's compliance with his sale-of-business restrictive covenants—is far above $75,000. Perry's book-of-business that his wrongful conduct now threatens exceeded $2 million in annual revenue before his "retirement." And his contractual restrictive covenants were and remain essential to protecting the nearly $10 million investment Relation made through its acquisition of Perry Insurance. Exhibit A to the Asset Purchase Agreement ("APA") further memorializes Perry and Relation's agreement to allocate over $75,000 of the purchase price to Perry's non-compete covenant at the time of the sale. (*See* Exh. 1, APA, exh. A). Relation additionally expects Perry's breaches will cause harm amounting to hundreds of thousands of dollars in lost goodwill and renewal business, undoubtedly growing to millions in losses if Perry is not restrained as Relation has requested.

9. The APA was formed in North Carolina and is governed by North Carolina law. Perry contractually consented to the jurisdiction of North Carolina courts for any disputes arising out of the APA. He additionally agreed that all claims arising under the APA must be brought exclusively in a North Carolina state or federal court. (*See* Exh. 1, APA, art. 16).

10. Venue is proper in this Court because Relation's primary North Carolina office is in this District, and because this District is one in which Perry is subject to personal jurisdiction within North Carolina. *See* 28 U.S.C. § 1391(b)(2).

## III.
## FACTS

**A. Relation's Business and its Nearly $10 Million Acquisition of Perry Insurance Group in Late-July 2021**

11. Relation and its affiliates comprise a leading nationwide insurance brokerage firm offering business insurance, employee benefits solutions, retirement services, risk-management services, and commercial and personal lines property and casualty insurance products. Relation

offers these and other insurance products and services to clients in the Carolinas and other areas of the United States.

12. Over the years, Relation has expanded its offerings and geographic reach through organic growth and by a series of acquisitions of other insurance brokers aligned with Relation's strategic vision. The 2021 purchase of Perry Insurance's business is one such acquisition.

13. On July 30, 2021, Perry and Relation closed on the sale of Perry Insurance's business to Relation. The associated APA is Exhibit 1 to this Complaint, with certain schedules omitted to protect confidentiality.

14. The assets Relation purchased through the APA include, among other things, the lists of Perry Insurance's clients and prospects, all of its insurance expiration and renewal rights, all of its "associated Goodwill, Confidential Information, files, claim files, [and] books," and "the sole right to collect and to retain" insurance premiums and commissions on the book of business transferring from Perry Insurance to Relation. (Exh. 1, APA, art. 24, pp. 32-33).

15. Relation further acquired all of Perry Insurance's "Intellectual Property and all of the rights of [Perry Insurance Group] in any Intellectual Property licensed by [it]," its domain names and e-mail addresses, and all "Acquired Marks" to include all Perry Insurance "registered or unregistered trademarks and service marks (and any derivations thereof) used in providing" insurance services and products. (*Id.* arts. 9.1(e) & 24, pp. 28, 33).

16. The purchase price Relation paid to Perry for the assets transferred under the APA included nearly *$8 million* in cash, equity above *$1 million* in value, and *additional* performance-dependent cash payments and earn-outs. (*Id.*, art. 2.1, pp. 2-3).

17. Prior to the sale, Perry was the principal owner of Perry Insurance, overseeing a multi-million-dollar book of business that generated substantial repeat commissions, including on

4

renewal premiums. Perry Insurance had its main office on Sunset Boulevard in Lexington, South Carolina, and the e-mail domain for Perry Insurance was @perryinsgroup.com.

**B.     Perry Promised to Abide by Certain Restrictive Covenants as Part of the Sale Consideration**

18.     As a material inducement to complete the deal, and as is typical in acquisitions of this type, Perry promised to abide by several restrictive covenants purposed to protect Relation's nearly $10 million investment in its purchase of Perry Insurance's assets. In Article 9.1 of the APA, Perry "acknowledge[d] and agree[d] that substantial and valuable assets are being transferred to [Relation] . . . that include Confidential Information, relationships with Clients and Active Prospective Clients, and the associated Goodwill of [Perry Insurance]." The same section of the APA includes Perry's recognition that Relation has a "reasonable, necessary, and legitimate business interest in protecting" the assets transferring to Relation in the deal.

19.     Article 9.1(a) contains a non-disclosure covenant prohibiting Perry's disclosure or other misuse of Perry Insurance Confidential Information sold to Relation. The same section also contains Perry's affirmative promise to take steps needed for ensuring the protection of such information for Relation's benefit.

20.     Article 9.1(b) restricts Perry—and anyone acting for him or at his direction—from soliciting sales of, providing, or accepting any request to provide insurance products or services to any clients listed on the purchased client lists or that Perry worked with at Perry Insurance. That restriction continues until the later of the 5-year period following the APA's effective date or the 2-year period after the end of Perry's employment with Relation ("Expiration Date").

21.     Article 9.1(c) contains Perry's promise that through the Expiration Date he would not directly or indirectly become engaged in "Carrying on a Business" providing the same or similar insurance products or services sold by Perry Insurance or (post-transaction) by Relation.

This covenant is limited to the geographic areas Perry Insurance serviced at the time of the APA and the areas Relation serviced as its successor in interest, including Lexington, South Carolina, among other locations. The covenant expressly restricts Perry from acting as an officer of a competing insurance business, among other roles.

22. Article 9.1(d) contains Perry's additional promise not to "solicit, hire, employ, or otherwise retain the services of" Relation employees until the same Expiration Date. The covenant defines off-limits employees to include those who departed Relation through some inducement by Perry (or those working with him).

23. Article 9.1(e) of the APA contains Perry's promises to "cease and terminate" all use of the Acquired Marks being acquired by Relation and to not use any "any similar names [or] juxtapositions." By their terms, these promises apply without time limitation to everything from stationary to websites and beyond for purposes of ensuring Relation alone controls the use of any marks related to the Perry Insurance brand or that would denote its involvement in the provision of insurance products or services.

C. **Perry's Employment with Relation and Alleged Retirement, His Daughter's Sudden Departure, and Relation's Discovery of Their New Competing Business**

24. As additional consideration for the sale of Perry Insurance, Relation offered and Perry accepted a position as a Relation Vice President. He remained a senior Relation employee for just over three years after the transaction, as did his daughter, Meredith Perry Sox ("Sox"), who also joined Relation in a leadership role in connection with the acquisition.

25. After he received substantial *further* contingent compensation under the APA, Perry notified the president of Relation's business unit that he intended to resign his position, "look[ing] forward to then next chapter of [his] life" and to "enjoy life after work." He provided that notice on November 5, 2024, and his last day with Relation was December 2, 2024. Perry

6

never disclosed to Relation any plan to begin competing _or_ to assist Sox or his other child(ren) to develop a competing business.

26. Relation likewise had no reason to believe Perry's retirement notice was a lie, or that Perry's notice was otherwise intended to mislead Relation while he, Sox, and others founded a competing brokerage right under Relation's nose. The now-emerging timeline of events leaves little doubt this is what Perry and co-conspirators have been perpetrating against Relation over recent months.

27. In February 2025, Sox resigned her employment with Relation citing her need to attend to health issues. Relation understood Sox's purported reasons for leaving and wished her well. But over the next few weeks, two of Relation's Account Managers in the Lexington office also resigned their employment without disclosing their next professional landing spots. Sox had worked closely with both while at Relation.

28. As Relation's suspicions grew, it commenced further investigation. The results of that investigation and certain other recent discoveries have only confirmed a conspiracy is afoot, with Perry's participation.

29. Since Sox's departure, more than 100 policies from Perry's book of business have had their broker of record ("BOR") change away from Relation. Relation atypically has not been privy to where those policies were moving. And many of the insureds at issue _even have notified Relation they never authorized a change in broker at all_.

30. These facts led Relation to dig further still. In doing so, Relation discovered the recently-formed existence of Perry Group Insurance Services LLC ("Perry Group"). The name self-evidently is nearly identical to Perry Insurance Group—the business purchased by Relation through the APA in 2021. This similarity is intentional.

7

31. The intended similarities do not end there. After leaving Relation, Perry changed the e-mail address on his South Carolina insurance licensing profile and his LinkedIn profile to david@perryinsgrp.com. Perry previously had used david@perryinsgroup.com—which Relation purchased through the APA—to do business at Perry Insurance and at Relation after the APA.

32. The South Carolina Secretary of State's records list Perry Group's formation date as March 6, 2025, with Sox as its registered agent. Publicly available records have identified Perry as an officer of Perry Group, as the below screenshot from the Lexington Chamber and Visitors Center website confirmed:



The phone number shown for Perry is the same as Perry's "business primary phone" listed on his South Carolina insurance licensing profile.

33. Perry's competition with Relation goes beyond his apparent leadership role with Perry Group. National Association of Insurance Commissioners ("NAIC") records reveal Perry

secured an appointment to write life insurance policies through Athene Annuity and Life Company on March 7, 2025—just *one day* after Perry Group's formation. Obtaining insurance appointments is the opposite of a supposed retirement.

34. To make the affront to Relation even worse, Perry Group's office address on West Main Street in Lexington, South Carolina, is only 1.9 miles down the road from Relation's office where Perry, Sox, and the recently departed account managers worked just weeks or months ago.

35. Relation has every reason to believe the numerous policies it has lost over the past two months have been diverted from Relation to Perry Group or its proxies. Relation likewise has every reason to believe Perry and his co-conspirators' choice of the Perry Group's business name, e-mail address, office location, and assumed office personnel are not accidental—these facts are all part of a plan to deceive Relation's clients (and its prospects) into falsely believing Perry Group is the same as Relation's business just down the road.

36. There is no justification for the blatant unfair competition occurring, with Perry as one of the apparent leaders of an off-limits competitor. The intent of Perry and his co-conspirators' actions is to harm Relation. That harm—including the irreparable loss of client relationships and goodwill and the value of the marks Relation purchased from Perry in 2021—is ongoing and will continue unless and until enjoined by the Court.

## IV.
## BREACH OF CONTRACT CAUSE OF ACTION

37. Relation incorporates all of the above allegations by reference.

38. Relation and Perry are parties to the APA, a valid and enforceable contract.

39. Relation has performed its obligations under the Agreement, and all conditions precedent to enforcement by Relation, if any, have been satisfied.

40. Perry has breached, is breaching, and has conveyed a clear intent to continue his

breaches of the restrictive covenants in Section 9.1 of the APA, including at least Sections 9.1(c) and 9.1(e), by the means and in the manner described above.

41. The covenants embodied by APA Sections 9.1(c) and 9.1(e) are valid obligations Perry agreed to fulfill in connection with his sale of Perry Insurance to Relation in exchange for millions of dollars and other consideration. The non-compete restrictions contained in Section 9.1(c) are reasonable in all aspects—including time, geography, and activity restrained—and are necessary to protect Relation's legitimate business interests in the client relationships, goodwill, and other assets it purchased through the APA. Perry's promises in Section 9.1(e) not to use any of the marks associated with Perry Insurance or "similar thereto" are likewise justified to protect the assets Relation acquired under the APA and to preserve its goodwill with clients and active prospects on a going-forward basis.

42. Perry's breaches of his contractual obligations owed to Relation are causing and threatening to further imminently cause irreparable harm to Relation. There is no fully adequate legal remedy. Relation accordingly seeks preliminary and permanent injunctions against further breaches by Perry, in addition to all recoverable damages that may be calculated.

## V.
## PRAYER

WHEREFORE, Relation prays that Perry be commanded to appear and answer this suit, and that the Court award the following relief:

    a) an order preliminary enjoining Perry, and all those acting in concert with him, from taking further actions in breach of Section 9.1 of the APA;

    b) a permanent injunction enforcing the terms of the APA;

    c) monetary damages, to the extent calculable;

    d) pre-judgment and post-judgment interest; and

e) all further relief to which Perry may be entitled at law or in equity.

Respectfully submitted,

*/s/ Anne E. Reuben*
Anne E. Reuben, NC Bar 43154
areuben@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, NC 28202
Telephone: 206.623.3300
Facsimile: 206.447.6965

Timothy A. Rybacki, TN Bar 034038
(*Special Appearance Forthcoming*)
trybacki@littler.com
LITTLER MENDELSON, P.C.
333 Commerce Street, Suite 1450
Nashville, TN 37201
Telephone: 615.514.4125
Facsimile: 615.383.3233

ATTORNEYS FOR PLAINTIFF RELATION INSURANCE SERVICES SELECT, INC.

11